UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BENJAMIN J. GOSS,

                    Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              10-CV-58S

JLG INDUSTRIES, INC.,

                    Defendant.

## I. INTRODUCTION

Plaintiff Benjamin J. Goss brings this diversity action claiming that Defendant JLG

Industries, Inc. ("JLG") is liable under theories of negligence and strict liability for the

design and manufacture of a JLG 2033E scissor lift rendered defective for allegedly failing

to come equipped with a static strap.  Presently before this Court is Defendant's Motion for

Summary Judgment.  Also before this Court is Defendant's Motion to Exclude Expert

Testimony and Defendant's Motion to Exclude Heart Attack-Related Evidence.[1]  For the

following reasons, Defendant's Motion for Summary Judgment is granted in part and

denied in part.  Defendant's Motion to Exclude Expert Testimony is granted.  Defendant's

---

[1] In support of its Motion for Summary Judgment, Defendant filed a Memorandum of Law; the
Affidavit of Marybeth Priore, with Exhibits; a Local Rule 56.1 Statement of Material Facts; a Reply
Memorandum; the Reply Affidavit of Marybeth Priore, with Exhibit; and the Affidavit of Brent Hoover.
(Docket Nos. 24, 25, 26, 27, 45.)  In opposition, Plaintiff filed a Statement of Disputed Material Facts; his
own Memorandum of Law; and the Affirmation of Michele A. Braun, with Exhibits.  (Docket Nos. 34, 36,
38.)
        In support of its Motion to Exclude Expert Testimony, Defendant filed a Memorandum of Law, the
Affidavit of Marybeth Priore, with Exhibits, and a Reply Memorandum.  (Docket Nos. 29, 50.)  Plaintiff
responded with a Memorandum of Law; and the Affirmation of Michele Braun, with Exhibits.  (Docket Nos.
46, 48.)
        Finally, in support of its Motion to Exclude Heart Attack-Related Evidence, Defendant filed a
Memorandum of Law, the Affidavit of Marybeth Priore, with Exhibits; and a Reply Memorandum.  (Docket
Nos. 30, 51.)  Plaintiff filed an Affirmation in Opposition, with Exhibits.  (Docket No. 41.)

Motion to Exclude Heart Attack-Related Evidence is granted in part and denied in part.

## II. BACKGROUND

A.      Facts[2]

Much of the relevant background is undisputed.  Defendant is a Pennsylvania corporation with its principal place of business in the State of Pennsylvania.  (Notice of Removal ¶ 10, Docket No. 1.)  Defendant manufacturers and sells the JLG 2033E Scissor Lift, a self-propelled aerial work platform perched on top of an elevating "scissor" mechanism.  (Def.'s Stmt. ¶ 9, Docket No. 24.)  The machine is controlled by a primary operator control station in the platform, from which it can be driven and the platform raised and lowered.  (Def.'s Stmt. ¶ 12.) The scissor lift can be equipped with a number of optional features, including special non-marking tires for indoor use designed not to leave black skid marks on floors or other surfaces.  (Def.'s Stmt. ¶ 20.)  When equipped with such tires the lift is also equipped with a "static strap."  (Def.'s Stmt. ¶ 22.)  This strap is attached to the underside of the machine to drag along the ground and relieve built-up static electricity by grounding the charge.  (Def.'s Stmt. ¶¶ 23, 24.)

On November 18, 1998 JLG sold one of its scissor lifts, serial number 0200053715, to the Hertz Corporation ("Hertz") complete with the optional non-marking tires.  (Def.'s Stmt. ¶¶ 1, 7, 25.)  Hertz, in turn, sold the machine to Delphi Harrison Thermal Systems ("Delphi") on November 20, 1998.  (Def.'s Stmt. ¶ 8.)

Plaintiff Benjamin J. Goss, an employee at Delphi and resident of New York, was

---

[2] This Court has accepted facts included in Defendant's Statement of Facts to the extent that they have not been controverted by Plaintiff's statement of disputed material facts.  See Local Rule 56(a)(2) (statements of material fact that are not specifically controverted by the non-moving party are deemed admitted).

operating the machine in question on February 10, 2006.  (Notice of Removal ¶ 12; Def.'s Stmt. ¶ 1.)  Between 7:30 a.m. and 8:00 a.m. Plaintiff was on the machine's platform preparing to conduct routine maintenance work on an overheard door.  (Def.'s Stmt. ¶¶ 91, 92.)  Plaintiff drove the machine to the door and raised the platform approximately fifteen feet.  (Def.'s Stmt. ¶ 96.)  Plaintiff apparently then pulled a wrench out of his pocket.  As he went to set it down on the platform floor he saw a bluish-yellowish arc with a flash and received an electrical shock created by static build-up.  (Def.'s Stmt. ¶¶ 97, 100.)  Plaintiff thereafter lowered the lift to ground level and got off the platform.  (Def.'s Stmt. ¶ 99.)

Investigation following the accident revealed that the machine lacked a static strap. (Def.'s Stmt. ¶ 100.)

## B.   Procedural History

Plaintiff commenced this action on January 30, 2009 by filing a complaint in New York State Supreme Court, Erie County against JLG.  (Docket No 1-2.)  Plaintiff thereafter filed an amended complaint on February 6, 2009 adding R.B. U'Ren Equipment Rentals, Inc. ("U'Ren") and Overhead Door Corp. ("Overhead") as Defendants.  (Docket No. 1-3.) A second amended complaint followed on May 18, 2009, asserting strict liability and negligence claims against JLG based on its manufacture and design of the JLG 2033E Scissor Lift.  (Docket No. 1-8.)  U'Ren was terminated as a party pursuant to a Stipulation of Discontinuance signed by the parties on January 13, 2010.  (Docket No. 1-13.)  The case was then removed to the United States District Court for the Western District of New York on January 25, 2010 on the basis of diversity jurisdiction.  (Docket No. 1.)  Overhead was terminated as a party on February 28, 2011 (Docket No. 22.)  JLG filed the present

Motion for Summary Judgment on March 29, 2011 (Docket No. 24), and on April 15, 2011 filed its Motion to Exclude Expert Testimony (Docket No. 29), and Motion to Exclude Heart Attack-Related Evidence (Docket No. 30).  The parties' briefs were deemed submitted on May 26, 2011, at which time this Court took Defendant's motions under advisement without oral argument.

## III. DISCUSSION

### A.    Motion for Summary Judgment

#### 1.    Legal Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56©. A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." <u>Rule v. Brine, Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. <u>Anderson</u>, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); <u>D'Amico v. City of N.Y.</u>, 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the nonmoving party. <u>Anderson</u>, 477 U.S. at 252.

## 2. Defendant's Motion for Summary Judgment

Defendant's motion is premised on a single factual assertion, namely, that the scissor lift sold to Hertz, and then sold to Delphi, was equipped with a static strap at the time it left JLG's control and that only later was the strap removed. JLG variously characterizes this fact as constituting a subsequent modification, failure of proximate cause, or superseding cause relieving it of liability. JLG also argues that Plaintiff's failure to warn claim should be dismissed if this Court concurs with JLG's factual assessment, as well as on the independent ground that Plaintiff has not submitted expert testimony on this claim. Plaintiff disputes JLG's contention that the machine came with a static strap and reiterates his claim that JLG failed to adequately warn its customers, technicians, and lift operators of the need for a static strap.

5

"A product defect may consist of a mistake in manufacturing, an improper design, or inadequacy or absence of warnings for use of the product." State Farm Fire & Cas. Co. v. Nutone, Inc., No. CV 05-4817, 2010 WL 3154853, at *6 (E.D.N.Y. Aug. 9, 2010).  Goss' Second Amended Complaint brings all three.  (Second Am. Comp., Docket No. 1-8.)  This Court will consider each in turn.

### i.    Plaintiff's Design Defect Claim

To establish strict products liability for a defective design under New York law, a plaintiff must demonstrate that "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." G.E. Capital Corp. v. A.O. Smith Corp., No.  01 Civ. 1849, 2003 WL 21498901, at *4 (S.D.N.Y. July 1, 2003) (quoting Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 60 (S.D.N.Y. 2001)); see also Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 108, 450 N.E.2d 204, 207-08 (1983).[3]

This Court will grant JLG's Motion for Summary Judgment as to Goss' design defect claim.  A review of the parties' submissions shows that the machine was designed to be equipped with a static strap.  Plaintiff's claim might survive if JLG had purposefully designed their lifts not to use such straps, but it is undisputed that JLG's policy is to attach static straps anytime customers opt for non-marking tires.  (Def.'s Stmt. ¶ 22.)  JLG agrees that operation of a scissor lift with non-marking tires without a static strap can lead to the build-up of a static charge.  (Def.'s Stmt. ¶ 23.)

---

[3] In this diversity action, New York law governs all issues presented by Defendant's Motion for Summary Judgment.  McCarthy v. Olin Corp., 119 F.3d 148, 153 (2d Cir.1997) (applying New York law to products liability action against out-of-state defendants).

Further, Goss himself concedes that he is only raising a manufacturing defect and a failure to warn claim, stating that "liability of the defendant, JLG, turns on a factual question, 'whether a static strap required by defendant, JLG's own specification was ever attached to the machine prior to leaving JLG hands' and 'whether defendant, JLG, sufficiently notified and/or warned service technicians and operators of the need for a static strap.'" (Pl.'s Opp'n 5, Docket No. 48.)  Goss also distinguished case law relied upon by JLG because it only addressed design defect claims, while "[h]ere, plaintiff's claim against defendant, JLG, is one of manufacturing defect related to the absence of a required static strap at the time it left defendant's hands." (Id. at 6-7.)  Accordingly, because Goss is no longer alleging that JLG's scissor lift was defectively designed, but only that the machine at issue failed to conform to that design and that JLG failed to warn customers to look for such noncomformity, JLG's Motion for Summary Judgment as to Goss' design defect claim will be granted.

### ii.    Plaintiff's Manufacturing Defect Claim

Turning to Goss' manufacturing defect claim, Goss contends that there is a factual dispute as to whether, when the scissor lift left JLG's control, it was equipped with a static strap.  A review of the record demonstrates that scissor lifts ordered with the optional non-marking tires also came equipped with a static strap.  (Def.'s Stmt. ¶ 22.)  The machine in question was ordered by Hertz to come with non-marking tires.  (Def.'s Stmt. ¶ 25.)  There is no dispute as to these facts and it is clear that JLG intended for this machine to have come equipped with a static strap.

To recover damages for a manufacturing defect, a plaintiff must establish that the product was defective and that the defect was a substantial factor in causing the injury.

Derienzo v. Trek Bicycle Corp., 376 F. Supp. 2d 537, 560 (S.D.N.Y. 2005).  "A product may be defective when it contains a manufacturing flaw."  Liriano v. Hobart Corp., 92 N.Y.2d 232, 237, 677 N.Y.S.2d 764, 700 N.E.2d 303 (1998).  However, "[u]nder New York law, [a] manufacturer may not be cast in damages, either in a strict products liability or negligence cause of action, where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of the plaintiff's injuries."  Urena v. Biro Mfg. Co., 114 F.3d 359, 364 n. 2 (2d Cir. 1997) (quoting Wyda v. Makita Elec. Works, Ltd., 648 N.Y.S.2d 154 (2d Dep't 1996)) (quotation marks omitted).  The substantial modification defense is intended to protect a manufacturer from claims subsequent to the alterations, modification, or destruction of a safety feature.  See Nutone, Inc., 2010 WL 3154853, at *7.  Where an accident would not have occurred but for the subsequent modification, a manufacturer will not be held liable.  Mackney v. Ford Motor Co., 673 N.Y.S.2d 718 (2d Dep't 1998).

A defendant may show that a manufacturing defect claim should be dismissed by "submitting proof that the [product] was built to . . . specifications and was thoroughly examined and approved . . . prior to shipment."  McArdle v. Navistar Int'l, 293 A.D.2d 931, 932-33 (3rd Dep't 2002).  In support of finding that the machine in question did come so equipped, JLG has submitted the assembly and inspection logs allegedly showing the machine's assembly and the various components installed.  (Def.'s Stmt. ¶¶ 26, 27.)  The November 13, 1998 history log shows that a machine with a serial number matching the one in question had listed as one of its components a "static strap (non-mark tires)."  (Ex. K, Docket No. 25-11.)  The same machine appears on a document entitled "Orders Released for 11/13/1998" and shows the inclusion of a static strap, item number 0257372.

8

(Ex. S, Docket No. 25-19.)  That document also has written on it "Audit 4356 11-17-98."  (Id.)  Brent Hoover, JLG's Manager of Product Safety and Reliability, testifies that this notation means that the machine was subject to an audit during which an inspector verified that each of the components listed was on the machine.  (Hoover Dep. 69:20-71:17, Sept. 28, 2010, Docket No. 25-18.)  Other exhibits show additional inspections of the machine, though these do not include a component checklist.  (Ex. T, Docket No. 25-20.)  Notably, there is also a machine shortage report showing that an assembly supervisor found no shortages.  (Ex. U, Docket No. 25-21.)

Testimony by Hertz Branch Manager Kevin Rosso corroborates that when the scissor lift in question left assembly it was equipped with a static strap.  Rosso stated that Hertz would have inspected everything on the receiver ticket.  (Rosso Dep. 57:4-14, Sept. 30, 2010, Docket No. 25-25.)  Although it does not appear that the receiver ticket is among the various documents submitted by the parties, a document entitled "New Machine Inspection / First Delivery / End of Warranty" certifies that any discrepancies were corrected and that the machine was in satisfactory condition.  (Ex. W, Docket No. 25-23.)[4] According to Rosso such inspections are conducted with great care.  (Rosso Dep. 66:22-68:8.)  However, Rosso did not know whether a technician would have looked for a static strap when performing a new product inspection on a machine equipped with non-marking tires.  (Rosso Dep. 39:20-40:1.)

An annual machine inspection report from November 20, 1998 shows that there

---

[4] A receiver ticket appears to be a general term referring to any document, such as a packing slip or new machine inspection delivery ticket, that has been received by a purchaser.  (Rosso Dep. 63:11-66:7.)

were no unauthorized modifications.  (Ex. X, Docket No. 25-24.)  On July 12, 2002 the machine underwent a three month inspection by U'Ren.  (Def.'s Stmt. ¶ 45.)  Edward Hall, shop manager at U'Ren confirmed that 1998 JLG scissor lifts equipped with non-marking tires would also come with an attached static strap.  (Hall Dep. 39:18-40:18, Docket No. 25-26.)  U'Ren's inspection form does not refer to a missing or damaged static strap.  (Ex. BB, Docket No. 26-2.)  Further, Hall's testimony shows that this inspection would have included checking underneath the machine for the presence of a static strap.  (Hall Dep. 60:1-61:3.)

Against this evidence, Goss has submitted a November 18, 1998 invoice which lists non-marking tires, but makes no mention of a static strap.  (Brown Aff., Ex. E.)  Goss also submitted the testimony of Randy Curry who drilled bolt holes and installed two static straps after the accident, and, while underneath the machine, did not notice any materials that might be the remnants of a former static strap.  (Curry Dep. 39:15-22, Nov. 12, 2010, Docket No. 38-14.)  Similarly, Ronald Cochran, the Delphi supervisor who investigated the cause of Plaintiff's accident and prepared the accident report did not find any strap remains.  (Cochran Dep. 39:16-40:2, Oct. 15, 2010, Docket No. 38-11.)  More significantly, Cochran does not even recall seeing any bolts or bolt holes underneath the frame to which a strap might have been attached.  (Cochran Dep. 40:3-8.)[5]

----

[5] Goss' expert, John Bistolas, also opined that based on the evidence, JLG failed to install a static strap on the machine.  However, as discussed later in this Opinion, Plaintiff's expert is no more qualified than this Court to consider whether a static strap was attached at the time the machine left JLG's control.  Further, it appears that the expert was unclear on what various of the exhibits signified, in particular whether they actually were assembly records.  (Bistolas Dep. 116:20-117:12, Jan. 19, 2011, Docket No. 38-18.)  Bistolas also did not know where JLG attaches static straps, but nevertheless testified that "[t]here were no holes where a static strap would be attached" despite not having looked underneath the machine.  (Bistolas Dep. 98:11-99:6, 100:18-101:8.)

This Court is not persuaded that the November 18, 1998 invoice constitutes evidence showing the absence of a static strap. (Ex. D, Docket No. 25.)  Although the invoice lists non-marking tires, and makes no mention of a static strap, the record shows that it was JLG's policy to attach a static strap whenever customers requested non-marking tires.  Further, the invoice lists a total of 14 items, a far cry from the far more extensive equipment parts breakdown in the "Orders Released" document. (Ex. S, Docket No. 25-19.)  In particular, one of the items listed on the sale invoice is simply entitled "JLG model 2033E Sizzor Lift." (Ex. D., Docket No. 25-4.)  Hoover's affidavit supports the conclusion that "[s]ales invoices do not list every component of the equipment being sold." (Hoover Reply Aff. ¶ 4, May 12, 2011, Docket No. 45-3.)  Similarly, the fact that Curry did not see the remnants of any static strap does not mean that a strap was not present when the lift was originally manufactured, several years earlier.

That only leaves Cochran's testimony.  In response to various questions, Cochran testified that he had observed the underside of the machine and could not recall seeing a static strap, bolts to which such a strap might have been attached, or holes in the frame in which the bolts could have been inserted. (Cochran Dep. 39:16-40:14.)

Moreover, Cochran looked at an identical scissor lift that did have a static strap. (Cochran Dep. 19:15-20:1; 40:15-21.)  This fact counters JLG's assertion that Cochran must have been looking in the wrong place. (See Def.'s Stmt. ¶ 61.)  It also leaves this Court in the awkward position of concluding that there is a genuine issue of material fact that cannot be resolved at this time, based on the possibility that the machine lacked the bolt hole necessary to accommodate a strap.  The existence of such a bolt hole would rebut the only evidence Goss has submitted from which a reasonable trier of fact could

11

conclude that the machine was not equipped with a static strap when it was sold to Hertz. However, were there, in fact, no bolt hole it would mean that JLG could not have attached a strap at the front left side of the vehicle's underside, the location JLG claims to typically install the strap.  (Hoover Aff. ¶ 12, Mar. 29, 2011, Docket No. 26-10.)  This would enable a trier of fact to conclude that JLG neglected to install a strap during manufacture.  Absent evidence conclusively showing whether such a bolt hole existed, this Court cannot grant summary judgment in Defendant's favor on Plaintiff's manufacturing defect claim.[6]

Accordingly, JLG's Motion for Summary Judgment on Plaintiff's manufacturing defect claim will be denied.

### iii.    Failure to Warn Claim

Even were this Court to grant JLG's Motion for Summary Judgment on Plaintiff's manufacturing defect claim, and find that Plaintiff modified the lift by removing the static strap, JLG could still be liable "for failure to warn of the consequences of such a modification."  See Nutone, Inc., 2010 WL 3154853, at *9 (citing Liriano, 92 N.Y.2d at 236)).  To succeed on a failure to warn claim, New York Law requires that plaintiffs show that a defendant's failure to warn was the proximate cause of the injuries.  See Cramer v. Toledo Scale Co., 551 N.Y.S.2d 718, 719 (4th Dep't 1990).  Furthermore, plaintiffs must also show that if the warnings had been adequate, the product would not have been misused and the accident would have been avoided.  Banks v. Makita, U.S.A., Inc., 641 N.Y.S.2d 875, 877 (2d Dep't 1996).  Whether warnings were adequate is generally a

---

[6] This Court notes that photographs of the machine have been taken and depict the part of the underside where two static straps were attached following the accident.  However, these images do not reveal the existence or absence of a bolt hole or bolt.

question of fact for the jury to decide.  BIC USA, Inc., 199 F. Supp. 2d at 85.  Other issues

that typically require a jury to resolve include feasibility, difficulty of issuing warnings in the

circumstances, obviousness of the risk, knowledge of the product, and proximate cause.

Liriano, 92 N.Y.2d at 243; see also Repka v. Arctic Cat, Inc., 20 A.D.3d 916, 798 N.Y.S.2d

629, 631 (4th Dep't 2005).

Relevant to JLG's claim that the strap was removed after the lift left JLG's

possession, "[t]he doctrine of substantial modification is not applicable to failure to warn

claims, especially when the allegation is that the manufacturer failed to warn that the

product, as modified, may be dangerous."  Saladino v. Stewart & Stevenson Servs., Inc.,

No. 01-CV-7644 (SLT)(JMA), 2007 WL 4285377, at *9 *E.D.N.Y. Dec. 3, 2007).  Here, JLG

did provide generic warnings against modifying its scissor lifts.  (Ex. E, Docket No. 25-5.)

As discussed above, whether the machine was modified or whether it was subject to a

manufacturing defect is disputed.  JLG also included warnings in its Operators and Safety

Manual relating specifically to static straps.  The Manual stated that because of static

electricity build-up associated with machines equipped with non-marking tires "a static strap

*may* be attached to the bottom of the frame."  (Id.) (emphasis added).  The sufficiency of

this warning is called into question through testimony by various individuals.  Goss testified

that he had never heard of a static strap prior to the accident.  (Goss Dep. 199:10-14, Aug.

6, 2010, Docket No. 25-14.)  John Herrington, another Delphi employee, testified that he

would not have checked for a static strap in conducting a pre-operation check of a JLG

scissor lift.  (Herrington Dep. 66:7-14, Oct. 15, 2010, Docket No. 46-5.)  Curry similarly

stated that he neither knew whether the scissor lift was intended to have a static strap, nor

checked for one during inspections.  (Curry Dep. 40:10-14; 73:19-54:16.) Cochran, the

maintenance supervisor of the building in which the accident occurred, also was not aware of whether the lifts in his building had static straps or not.  (Cochran Dep. 53:17-20.)

This Court finds that the permissive language of the only warning to explicitly mention static straps combined with the numerous witnesses who were wholly unaware of the need for such a strap creates a genuine issue of material fact concerning the warning's adequacy.  Defendant's Motion for Summary Judgment on Plaintiff's failure to warn claim is denied.

**B.      Defendant's Motion to Exclude Expert Testimony**

JLG seeks to exclude the expert testimony of John Bistolas on the ground that he is not qualified and has rendered opinions that are neither relevant nor reliable.  A review of the parties' briefs reveals significant confusion as to the purpose for Bistolas' expert testimony, owing to Plaintiff's distinct design defect, manufacturing defect, and failure to warn claims.  As Plaintiff's response makes clear, Bistolas' testimony is not being admitted to show JLG's design was defective, given that both parties agree that the issue is whether there actually was a static strap attached to the machine in question.  Nor is he testifying on the matter of Plaintiff's injuries.  (Pl.'s Opp'n 10-11.)  In Plaintiff's words, "[t]he purpose of plaintiff's expert's testimony is to pull together all of the factual evidence and present it to the jury with scientific explanation and opinions to support plaintiff's position."  (Pl.'s Opp'n 10.)  As explained below, this Court finds that this is not enough to warrant admission of Bistolas' expert testimony.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which reads:

> If scientific, technical, or other specialized knowledge will assist

14

the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of expert testimony has the burden of demonstrating by a preponderance of the evidence that the testimony is competent, relevant, and reliable. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 n.10, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); Koppell v. New York State Bd. of Elections, 97 F. Supp. 2d 477, 479 (S.D.N.Y .2000); Bourjaily v. United States, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987).

Pursuant to Rule 401 of the Federal Rules of Evidence, relevant evidence is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A court should not admit testimony "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." United States v. Mulder, 273 F.3d 91, 101 (2d Cir. 2001) (quoting United States v. Castillo, 924 F.2d 1227, 1232 (2d Cir. 1991)).

Here, JLG admits that a lift with non-marking tires requires a static strap to dissipate static build up. As this Court has already discussed, Plaintiff's manufacturing claim comes down to whether this particular machine left JLG's control equipped with such a strap. Resolution of this question is hardly outside a jury's ability to understand absent testimony by an expert in electrical engineering. Bistolas' testimony is therefore not required as to

Plaintiff's manufacturing defect claim.

Bistolas also testifies that JLG should have explicitly included checking the condition of a static strap as part of its quarterly and annual inspection check-off list, and that safety signs should have been installed on the machine warning operators to check that static straps were touching the floor.  (Bistolas Expert Rep., Docket No. 29-3.)  However, Bistolas admitted that he was not a warnings expert.  When asked whether he considered himself a warnings expert, Bistolas replied "No, but it's with you every day."  (Bistolas Dep. 62:17-19.)  Bistolas' background supports this frank assessment.  Bistolas never received formal education or held a job in which he designed warnings of instructions relating to electrical circuitry or mobile machinery.  Indeed, Bistolas has never actually designed a warning, instruction, or manual for equipment like the machine in question.  The only instructions Bistolas had any familiarity with were verbal instructions.

Given these qualifications, this Court cannot see how Bistolas' testimony would be "helpful to the jury in comprehending and deciding issues beyond the understanding of a lay person."  DiBella v. Hopkins, 403 F.3d 102, 121 (2d Cir. 2005).  Bistolas' lack of experience in designing warnings and instructions make his opinions as to JLG's quarterly and annual inspection forms, and the lift's safety signs nothing more than "conclusions, observations, and speculations [that] are not proper testimony from an expert witness."  Id. These opinions would add nothing to what the jury could not itself discover in reviewing the relevant materials on Plaintiff's failure to warn claim.  This is doubly so given Bistolas' apparent misunderstanding of some of the documents involved in this case.  See supra n.6.

Bistolas' testimony goes either to matters already stipulated to by Defendant, factual

16

issues a jury could easily understand, or issues for which Bistolas lacks the requisite "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.   Accordingly, testimony by Goss' expert witness John Bistolas will be excluded.

## C.   Defendant's Motion to Exclude Heart Attack-Related Evidence

JLG seeks to exclude evidence regarding Plaintiff's heart attack as well as evidence of Plaintiff's economic damages after June 12, 2007.  JLG contends that Goss has failed to establish a causal connection between his February 10, 2006 accident and a heart attack he suffered 16 months later, on June 12, 2007 by failing to submit expert medical testimony.  Because Goss cannot show causation, JLG further contends that Goss should not be allowed to introduce evidence relating to economic damages suffered after his heart attack.

Plaintiff's answer to JLG's interrogatories list three-pages worth of permanent injuries allegedly resulting from his February 10, 2006 accident.  These include dizziness, headaches, diffuse upper thoracic compression deformities, adjustment disorder with anxiety, depression, Post Traumatic Stress Disorder, occasionally severe chronic headaches, and scapular dyskinesia.  (Answers to Interrog. pp.15-18, Docket No. 41-1.) Also among the various injuries listed are precipitation of coronary heart disease and/or exacerbation of asymptomatic coronary heart disease resulting in myocardial infarction, as well as various injuries to his right shoulder.

In opposing JLG's motion, Goss does not object to excluding evidence that his heart attack was related to the accident.  Goss does challenge the exclusion of other material because evidence shows that other injuries were caused by the accident and that these contributed to his economic losses.  In support of this point, Goss submitted the decision

of Administrative Law Judge William R. Pietz in Goss' social security administration proceeding, an independent medical examination report by Dr. Frank Luzi, and the physician affirmation of Dr. Andrew C. Stoeckl.  Dr. Stoeckl states that Goss suffered a right posterior shoulder dislocation and posterior instability as a result of the electrical shock suffered during the accident, and that this accident rendered Goss 100% disabled. (Stoeckl Aff. ¶¶ 4, 8, May 12, 2011, Docket No. 43.)  Similarly, Dr. Luzi's examination report concludes that Plaintiff suffered injury to his right shoulder as a result of an electrical shock received on February 10, 2006.

A treating physician may provide expert testimony regarding "a patient's illness, the appropriate diagnosis for that illness, and the *cause* of the illness."  Deutsch v. Novartis Pharm. Corp., 768 F. Supp. 2d 420, 472 (E.D.N.Y. 2011) (quoting Gass v. Marriott Hotel Servs., Inc., 558 F.3d 419, 426 (6th Cir. 2009)) (emphasis in original).  Further, a physician testifying in that role is not an expert for purposes of Federal Rule of Civil Procedure 26(a)(2)(A), and may provide expert testimony on the issue of causation even without having submitted a detailed report.  Byrne v. Gracious Living Indus., Inc., No. 01 Civ. 10153, 2003 WL 446474, at *2 (S.D.N.Y. Feb. 25, 2003).  However, a treating physician must confine himself to information acquired as a treating physician, and not give an opinion formulated for trial.  See Smolowitz v. Sherwin-Williams Co., No. 02-CV-5940, 2008 WL 4862981, at *4 (E.D.N.Y. Nov. 10, 2008).  The key inquiry is whether a treating physician testifies on the basis of his "personal knowledge from consultation, examination and treatment of the Plaintiff, [and] 'not from information acquired from outside sources.'" Spencer v. Int'l Shoppes, Inc., No. CV 06-2637(AKT), 2011 WL 4383046, at *3 (E.D.N.Y. Sept. 20, 2011) (quoting Mangle v. Univ. of Rochester, 168 F.R.D. 137, 139 (W.D.N.Y.

18

1996)).

Here, Dr. Stoeckl's affirmation states that Goss became disabled as a result of injuries suffered from his February 10, 2006 accident.  To the extent he arrived at this opinion  through treatment of the Plaintiff, Stoeckl is permitted to testify as to the causal relationship between the injury and the accident.  Although JLG contends that Dr. Stoeckl's assessment of Plaintiff as 100% disabled is unnecessary for Goss' care or treatment, this Court notes that, were it to accept JLG's reasoning it is unclear when a physician would ever be allowed to testify as to causation or a plaintiff's medical condition, even when that physician personally treated a plaintiff.  See Manganiello v. Agostini, 07-CV-3644 (HB), 2008 WL 5159776, at *12 (S.D.N.Y. Dec. 9, 2008) (noting that "[c]ourts in this Circuit have regularly held that treating physicians may testify as to opinions formed during their treatment, including causation, severity, disability, permanency and future impairments, without the obligation to submit an expert report"); Brundidge v. City of Buffalo, 79 F. Supp. 2d 219, 225 (W.D.N.Y. 1999) (treating physician permitted to testify about "her opinion as to what caused plaintiff's mental problems as long as her opinion is based solely on her treatment of the plaintiff").  Here, it appears that Dr. Stoeckl actually treated Plaintiff, based on the copious copies of medical records attached to his affirmation.

Similarly, Dr. Luzi conducted an examination of Goss on August 23, 2006 and July 18, 2007.  (Luzi Rep., July 18, 2007, Docket No. 41-4.)  Dr. Luzi concluded that the February 10, 2006 accident caused Goss' right shoulder strain/sprain.  Although treatment provided by Dr. Stoeckl is included in Luzi's report, nothing else suggests that his conclusions were not based on his own examination.  Indeed, Luzi's opinion differs from that of Stoeckl, and found that Plaintiff had moderate partial disability, but that his

19

prognosis was "[f]air."  Id.

Accordingly, testimony by Goss' treating physicians will not be excluded, and JLG's Motion to Exclude Heart Attack-Related Evidence will be granted in part and denied in part. Goss, conceding that he cannot establish causation between the accident and his heart attack, cannot present evidence on that issue.  JLG's motion will be denied, however, to the extent it seeks to exclude evidence regarding Plaintiff's economic damages after June 12, 2007 beyond those associated with his heart attack.  Plaintiff is cautioned that his physicians can only offer opinions formed in the course of their actual treatment, and not based on information provided by other physicians.  See Spencer, 2011 WL 4383046, at *4; Motta v. First Unum Life Ins. Co., No. CV 09-3674(JS)(AKT), 2011 WL 4374544, at *4 (E.D.N.Y. Sept. 19, 2011) (permitting treating physician to testify regarding causation, but not with regard to another physician's records, opinions, or recommendations).  To the extent the opinions of either Dr. Stoeckl or Dr. Luzi were made on the basis of information beyond their personal knowledge, their testimony will be precluded.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied as to Plaintiff's manufacturing defect and adequate warning claims, and granted as to his design defect claim.  Defendant's Motion to Exclude the Expert Testimony of John Bistolas is granted.  Finally, Defendant's Motion to Exclude Heart Attack-Related Evidence is granted in part and denied in part.  Plaintiff will be precluded from arguing that his heart attack was causally related to his accident, but will be permitted to present evidence of his

20

economic damages following June 12, 2007.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 24) is GRANTED in part and DENIED in part.

FURTHER, that Defendant's Motion to Exclude Expert Testimony (Docket No. 29) is GRANTED.

FURTHER, that Defendant's Motion to Exclude Heart Attack-Related Evidence (Docket No. 30) is GRANTED in part and DENIED in part.

SO ORDERED.


Dated:      January 29, 2012
            Buffalo, New York

                                        /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                             Chief Judge
                                     United States District Court

21